01

02

03

04

05

06

07                     UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF WASHINGTON
08                              AT SEATTLE

09  RICHARD ALLAN CASE,                    )
                                           )    CASE NO. C12-0187-MJP-MAT
10            Petitioner,                   )
                                           )
11            v.                            )
                                           )    REPORT AND RECOMMENDATION
12  MAGGIE MILLER-STOUT,                    )
                                           )
13            Respondent.                   )
    _____ )

14

15                              <u>INTRODUCTION</u>

16            Petitioner Richard Allan Case proceeds pro se in this habeas corpus matter pursuant to

17  28 U.S.C. § 2254.  Petitioner is in custody pursuant to a 2006 conviction for murder in the

18  second degree and was sentenced to 180 months confinement.

19            Petitioner filed a habeas petition in February 2012.  (Dkt. 4.)  The undersigned, with

20  consideration of the petition, an amended answer (Dkt. 31), and state court record (Dkts. 15 &

21  32 (exhibits 1-74)), issued a Report and Recommendation recommending dismissal of two

22  grounds for relief raised in the petition.   Upon review, United States District Judge Marsha J.

REPORT AND RECOMMENDATION
PAGE -1

01 Pechman issued an Order Adopting Report and Recommendation with Amendment, with the

02 amendment addressing and finding not ripe for consideration a claim of ineffective assistance

03 of counsel on direct appeal, and entered a judgment.   (Dkts. 55 & 56.)

04      Judge Pechman thereafter granted a motion to alter or amend the judgment with

05 consideration of the new or newly clarified ineffective assistance of counsel claim and its effect

06 on the disposition of the case.   (Dkt. 58.)   The undersigned directed respondent to submit a

07 supplemental amended answer and provided plaintiff the opportunity to submit a response.

08 (Dkt. 59.)   Respondent submitted a supplemental answer (Dkt. 61) and supplemental state

09 court records (Dkts. 65 & 66 (exhibits 75-89)).   After initially seeking an extension of time to

10 respond, petitioner filed an amended petition.   (Dkt. 69.)   Respondent submitted an answer to

11 the amended petition (Dkt. 70), to which petitioner submitted a reply (Dkt. 72).

12      Petitioner's amended petition raises eight grounds for relief.   (*See* Dkt. 69.)   The Court

13 has reviewed the record in its entirety. [1]   For the reasons discussed herein, the Court

14 recommends petitioner's amended habeas petition be DENIED without an evidentiary hearing,

15 and this action DISMISSED.

16                              BACKGROUND

17 A.   Counsel Prior to Trial

18      Petitioner was initially assigned two attorneys to represent him at trial.   He sought, but

19 was denied substitution of counsel in May 2003.   (Dkt. 65, Ex. 76.)   In December 2003, the

20      1 As previously noted, while the Washington Court of Appeals could not locate the folder
containing correspondence, pleadings, and orders in petitioner's direct appeal, respondent provided
21 a copy of the state court docket and some of the relevant documents obtained from court files in other
cause numbers.   Respondent did not submit the more than seventy volumes of trial transcripts upon
22 determining they were not relevant to the resolution of petitioner's claims.   As before, the Court agrees
with respondent that the record submitted is sufficient to reach a determination in this case.

REPORT AND RECOMMENDATION
PAGE -2

01 trial court granted both a motion to substitute counsel and a motion to withdraw after petitioner

02 filed bar complaints and a civil rights lawsuit against his attorneys.  (*Id.*, Exs. 77-78.)   While

03 finding, "in terms of investigation, diligence, preparation, . . . no basis to find ineffective

04 assistance of counsel[,]" the trial court allowed for withdrawal and substitution due to the

05 "irreconcilably bad relationship" between petitioner and counsel.  (*Id.*, Ex. 78 at 59-62.)

06        The court reassigned counsel.  As before, petitioner moved for substitution and

07 pursued legal action against his attorney.   (*Id.*, Ex. 79 at 8-26; *see also id.*, Ex. 80 at 5-6 and

08 Dkt. 16, Ex. 5 at 1.)   In July 2004, the trial court again granted a motion to substitute counsel,

09 "not because of ineffective assistance but because of a breakdown in communication and an

10 inability to continue[.]"  (Dkt. 65, Ex. 79 at 33.)   The judge warned petitioner his pattern of

11 behavior could result in forfeiture of his right to counsel, engaged in an extensive discussion

12 with petitioner about self-representation at trial, and found petitioner understood "the

13 consequences and dangers of self-representation."  (*Id.* at 21-62.)   The Judge also advised that

14 if petitioner, in bad faith, caused another conflict of interest or communications breakdown

15 preventing further representation by newly appointed counsel, he would find petitioner

16 knowingly, intelligently, and voluntarily forfeited his right to an appointed attorney.  (*Id.* at

17 62-63.)

18        The court again assigned new counsel.   In March 2005, petitioner moved to discharge

19 counsel and to represent himself at trial.  (*Id.*, Ex. 80.)   The judge sought clarification from

20 petitioner as to whether he was asking for substitution of new counsel or seeking to proceed pro

21 se, to which petitioner responded:

22

REPORT AND RECOMMENDATION
PAGE -3

01      I am seeking to go pro se, Your Honor, and if you don't rule in my favor, then
I've already got a bar complaint and a skeleton lawsuit that is filed against [my
02      current counsel].   I am going to do whatever it takes to be designated pro se by
this Court.

03

04  (*Id*. at 7.)   The judge explained the difference between substitution of counsel, forfeiture of

05  counsel, and a request for self-representation.   (*Id*. at 8-13.)   When asked if he wanted a ruling

06  on a motion to substitute counsel, petitioner answered:   "No."   (*Id*. at 13.)   When asked if he

07  was withdrawing his motion for substitution, petitioner answered:   "My motion is to proceed

08  pro se."   (*Id*. at 14.)   The judge also asked petitioner whether he understood a request to

09  proceed pro se meant giving up his "right to be represented by any attorney, [his current

10  counsel] or anybody else in the telephone directory[,]" resulting in the following exchange:

11      Mr. Case:   Um hum.

12      Judge Mattson:   Is that what you want to do?

13      Mr. Case:   My position is I need to do whatever it takes for me to take
control of my case.   So, I mean, if I can waive my right to counsel,
14      proceed on my case pro se, then that is what I am willing to do, but my
position is if I am denied the right to waive counsel and proceed pro se,
15      then I will effectively pursue the bar complaint and the - - .
Judge Mattson:   As a way to forfeit (inaudible) hand.
16
      Mr. Case:   Yes, sir.   I mean, that is the truth of the matter there.
17

18  (*Id*. at 14.)   (*See also id*. at 15 (petitioner stated it was "absolutely" his position that he wanted

19  to handle his case on his own).)   The judge engaged in a lengthy colloquy with petitioner,

20  explaining petitioner's rights, the consequences of the waiver of counsel, and the dangers and

21  potential pitfalls of self-representation, and ultimately concluded petitioner voluntarily and

22  intelligently made a valid waiver of counsel.   (*Id*. at 17-48.)   (*See also* Dkt. 16, Ex. 2 at

REPORT AND RECOMMENDATION
PAGE -4

01   "Exhibit 'K'" (order granting motion to proceed pro se:  "The court finds the waiver to be

02   knowing, intelligent & voluntary."))   Petitioner thereafter proceeded pro se, with his last

03   attorney assigned as standby counsel for the trial.  (*See* Dkt. 65, Ex. 81 at 3.)

04   B.   Motions for Interlocutory Review of Prejudgment Rulings

05        In September 2005, petitioner sought interlocutory review of the trial judge's pretrial

06   orders denying his motion for sanctions and his motion to dismiss the charges.   (Dkt. 16, Exs.

07   1-4.)   The Washington Court of Appeals found the trial court did not commit an obvious or

08   probable abuse of discretion and denied review.   (*Id.*, Ex. 5.)   The court also denied

09   petitioner's motion to modify the ruling.   (*Id.*, Exs. 6-8.)   Petitioner did not seek further

10   review and the Court of Appeals issued a certificate of finality.   (*Id.*, Ex. 9.)

11        In November 2005, petitioner again sought interlocutory review of an order denying a

12   motion to dismiss under the speedy trial rule.   (*Id.*, Exs. 10-12.)   Because the trial court

13   entered the judgment and sentence before the motion could be heard, the Commissioner of the

14   Court of Appeals denied the motion as moot, noting petitioner could raise the issue in his

15   appeal.  (*Id.*, Ex. 13.)   Petitioner filed and the Washington Supreme Court denied a motion to

16   modify the ruling.  (*Id.*, Ex. 14-15.)   Following the issuance of a certificate of finality and the

17   filing of a motion to recall, the Court of Appeals denied the motion and petitioner sought

18   review.  (*Id.*, Exs. 16-19.)   The Washington Supreme Court denied review.   (*Id.*, Exs. 20-22.)

19        Petitioner also, in December 2005, sought discretionary review of an oral ruling of the

20   superior court.   (*Id.*, Ex. 23.)   The Court of Appeals directed petitioner to obtain a written

21   order for review and, when a written order was not provided, denied review.   (*Id.*, Exs. 24-26.)

22   Petitioner did not seek further review and the court issued a certificate of finality.   (*Id.*, Ex. 27.)

REPORT AND RECOMMENDATION
PAGE -5

01          Finally, in March 2006, petitioner sought interlocutory review of several superior court

02     orders.   (*Id*., Ex. 28.)   The appellate court directed petitioner to pay the filing fee or move for

03     an order of indigence, as well as to move for an extension of time to pursue the untimely

04     request for interlocutory review.   (*Id*., Ex. 29.)   Upon petitioner's failure to comply with those

05     instructions, the court dismissed the motion for interlocutory review, and the Court of Appeals

06     issued a certificate of finality.   (*Id*., Exs. 30-31.)

07     C.     <u>Direct Appeal</u>

08          The jury convicted petitioner of second degree murder.   (Dkt. 65, Ex. 75.)   On July 7,

09     2006, the court held a sentencing hearing, entered the sentence, and informed petitioner of his

10     rights on appeal.   (*Id*., Ex. 81 at 48-55).   As to counsel, the trial judge stated:

> . . . I don't know where you stand on the position of being represented by
> counsel, for purposes of an appeal, but just as in the trial, if you cannot afford
> counsel, you have the right to have counsel appointed and have portions of the
> trial record necessary for review of assigned errors transcribed at public expense
> for an appeal.

14     (*Id*., Ex. 81 at 53-54.)   On that same day, petitioner filed a notice of appeal pro se.   (Dkt. 66,

15     Ex. 83.)

16          The following month, in a hearing addressing several post-conviction motions

17     petitioner filed pro se, the judge asked whether petitioner was intending to represent himself on

18     appeal, and he replied:   "So far."   (Dkt. 65, Ex. 82 at 14.)   The prosecutor noted appellate

19     counsel could be assigned and the judge stated petitioner "might be well served by appellate

20     counsel" in relation to the record for the appeal.   (*Id*. at 14-16.)

21          Petitioner continued to represent himself pro se on appeal.   He filed a "Notice of

22     Appearance Pro Se" and a letter regarding "Order of Indigency/Notice of Appearance Pro Se."

REPORT AND RECOMMENDATION
PAGE -6

01  (Dkt. 66, Exs. 84-85.)   In October 2006, petitioner requested an order from the superior court

02  directing the Department of Corrections to provide him with materials "to prosecute an appeal

03  while pro se[,]" and asserted his constitutional right to represent himself.   (Dkt. 16, Ex. 32.)

04  Responding to the request for an order of indigency, the court acknowledged petitioner's

05  decision to proceed pro se on appeal, stating:

06          The stay is lifted and the filing fee is waived.   The Clerk shall issue a perfection
            schedule based on the date of this ruling.   Mr. Case shall be allowed to proceed
07          pro se.   However, there is no constitutional right to proceed [pro se] on appeal
            and Mr. Case's status as a pro se litigant may be reviewed in the event he cannot
08          proceed pro se.

09  (Dkt. 66, Ex. 86.)

10          In January 2007, the court again took note of petitioner's decision to proceed pro se:

11          Appellant has made very clear in the litigation at the trial court level that he does
            not wish to be represented by counsel; although he qualifies for appointed
12          counsel on appeal, he omitted appointment of counsel from the order of
            indigency he prepared for the trial court's signature.   He has been advised that
13          an appellant does not have a constitutional right to represent himself on appeal,
            yet the court would like to respect his wishes as much as possible.   . . .

14

15  (*Id*., Ex. 87.)   However, given petitioner's apparent difficulty in perfecting the record for

16  appeal, the Court appointed appellate counsel for the limited purpose of preparing the record.

17  (*Id*.)   The Court entered an order appointing counsel and clarified:   "Once the case is ready,

18  the appointment will cease and appellant Richard Case will be responsible for briefing and

19  compliance with all future appellate court deadlines."   (*Id*., Ex. 88; *accord* Dkt. 16, Ex. 46 at

20  14-15.)

21          As of July 19, 2007, the case was deemed "record ready."   (Dkt. 16, Ex. 46 at 10.)   The

22  appellate court file contained over seventy volumes of transcripts and over 3,000 pages of

REPORT AND RECOMMENDATION
PAGE -7

01 clerk's papers.   (*See id*. at 10, 13.)

02    By letter dated October 3, 2007, the clerk of the Court of Appeals addressed a pending

03 motion for extension of time to file petitioner's appellant brief, noting the record had been ready

04 since July 19, 2007 and appellant's brief had been due as of September 4, 2007.   (*Id*., Ex. 47.)

05 The court granted petitioner a sixty-day extension, to November 5, 2007, to file his brief, and

06 stated: "'No further extensions should be anticipated.'"   (*Id*.)   The court nonetheless granted

07 petitioner further extensions of time, until January 16, 2008 and March 21, 2008, for the filing

08 of his brief.   (*Id*., Ex. 46 at 7-8.)

09    Petitioner failed to meet his filing deadlines and, instead, moved to "order record to be

10 completed[.]"   (*Id*. at 7.)   By Order dated May 30, 2008, the Court of Appeals directed

11 petitioner to submit a concise list, within thirty days of the order, identifying the items he

12 believed were missing from the record.   (*Id*., Ex. 48.)   The court indicated that, upon

13 submission of a list, counsel would be reappointed for the purpose of determining the existence

14 of any additions to the record, but that, if petitioner failed to submit a list, his motion would be

15 denied and the record deemed complete.   (*Id*.)   The appellate docket reflects that, as of June

16 30, 2008, petitioner had not submitted a list of missing records to the court.   (*Id*., Ex. 46 at 6

17 (docket entry reflecting due date for submission of list states "Not filed").)   He, instead, sought

18 discretionary review of the appellate court order by the Washington Supreme Court.   (*Id*., Ex.

19 49.)   In so doing, petitioner asserted his pro se status and argued the reappointment of counsel

20 to address the perfection of the record violated his right to self-representation.   (*Id*.)   (*See also*

21 *id*., Appx. 7 ("I have exercised my right to self-representation (pro se) since March 2005.   I

22 elected to prosecute my appeal as pro se and filed my first 'Notice of Appeal' in June, 2006."))

REPORT AND RECOMMENDATION
PAGE -8

01   He "ardently oppos[ed]" the reappointment of counsel and, at most, requested the appointment

02   of a "conflict-free local paralegal to assist in reconstructing the record[.]"   (*Id.*, Ex. 49 at 7, 14.)

03   The Commissioner of the Supreme Court denied review, stating petitioner's "suggestion that

04   counsel have already proved inadequate to the task [of perfecting the record] is unpersuasive, as

05   is his apparent claim that counsel's interest and his now conflict."   (*Id.*, Ex. 50.)   Petitioner

06   moved to modify the ruling, attaching a grievance he filed with the Washington State Bar

07   Association regarding the performance of the attorney assigned to assist with perfecting the

08   record for his appeal.   (*Id.*, Ex. 51.)   The Supreme Court denied the motion.   (*Id.*, Ex. 52.)

09        The Court of Appeals continued to grant numerous extensions of time to allow for the

10   filing of petitioner's opening brief:   (1) on February 24, 2009, the court extended the deadline

11   to May 1, 2009; (2) on May 14, 2009, the court extended the deadline to June 1, 2009; (3) on

12   June 9, 2009, the court extended the deadline to July 1, 2009; (4) on July 28, 2009, the court

13   extended the deadline to August 31, 2009; and (5) on October, 12, 2009, the court extended the

14   deadline a final thirty days.   (*Id.*, Ex. 46 at 3-5.)   (*See also* Dkt. 66, Ex. 89 (July 28, 2009 order

15   outlining history of extensions).)   In the October 2009 order, the court ruled that petitioner's

16   appeal would be dismissed unless he filed his opening brief by the conclusion of the thirty-day

17   deadline.   (Dkt. 16, Ex. 46 at 3.)   When petitioner failed to meet that deadline, the Clerk of the

18   Court of Appeals, on November 24, 2009, dismissed the appeal.   (*Id.*, Ex. 53.)   Petitioner did

19   not move to modify the ruling (*see id.*, Ex. 46 at 2), and, on December 30, 2009, the Court of

20   Appeals issued a mandate (*id.*, Ex. 54).

21        In November 2009, petitioner moved for an extension of time to file a motion for

22   discretionary review.   (*Id.*, Ex. 55.)   The Clerk of the Washington Supreme Court denied the

REPORT AND RECOMMENDATION
PAGE -9

01   motion that same month.   (*Id.*, Ex. 56.)   Petitioner moved to modify the Clerk's ruling, but the

02   court, in December 2009, deemed the filing untimely and took no action.   (*Id.*, Exs. 57 & 58.)

03   In January 2011, petitioner filed a motion for recall of the mandate issued a year earlier.

04   (*Id.*, Ex. 46 at 2.)   The court denied the motion.   (*Id.* at 1.)   Petitioner, in March 2011,

05   petitioned the Washington Supreme Court for review.   (*Id.*, Ex. 59.)   In his motion, petitioner

06   again asserted his "guaranteed right to self-representation on appeal[,]" but also argued there

07   was no colloquy on record establishing his voluntary, knowing, and intelligent waiver of his

08   right to counsel.   (*Id.* at 2, 4-5, 11-13 (citing *Johnson v. Zerbst*, 304 U.S. 458 (1938)).   The

09   Supreme Court denied the request for review (*id.*, Exs. 60-62), and, on August 8, 2011, denied a

10   motion to modify the ruling (*id.*, Exs. 63-64).

11   D.      Post-Conviction Collateral Challenges

12   As stated above, petitioner filed an October 2006 motion in superior court requesting an

13   order directing the Department of Corrections to provide him with materials to litigate his

14   appeal.   (Dkt. 16, Ex. 32.)   The superior court transferred the motion to the court of appeals

15   for consideration as a personal restraint petition, and the appellate court found no basis for

16   relief.   (*Id.*, Ex. 35.)   Petitioner filed a motion for discretionary review, which the Washington

17   Supreme Court denied.   (*Id.*, Exs. 36 & 39.)   Subsequently, the Washington Supreme Court

18   denied a motion to modify its ruling, whereupon the Court of Appeals issued a certificate of

19   finality dated August 29, 2008.   (*Id.*, Exs. 40-42.)

20   Petitioner also, in March 2008, filed a petition for writ of mandamus in the Washington

21   Supreme Court.   (*Id.*, Ex. 43.)   The court construed the filing as a motion for expenditure of

22   public funds and denied the motion.   (*Id.*, Exs. 44 & 45.)

01        In July 2009, petitioner filed motions in superior court seeking to vacate his judgment

02  and to be transported to superior court, and filed a motion in the Court of Appeals seeking leave

03  to allow the superior court to consider his motion to vacate.  (*Id*., Exs. 65-66 & 69.)   The

04  superior court denied the motion for transport pending a decision from the Court of Appeals.

05  (*Id*., Exs. 67-68.)   The Commissioner of the Court of Appeals deemed unnecessary and denied

06  petitioner's motion for permission for the superior court to consider his motion, and further

07  denied a request to stay petitioner's direct appeal.  (*Id*., Ex. 70.)   The Commissioner stated:

08        This appeal has now been pending for more than 3 years and there is no good
          reason to further delay it.   Because Case indicated on two previous occasions
09        that his brief was almost finished and now seeks an indefinite stay without
          mentioning the brief, it appears as if he is merely delaying the matter.

10

11  (*Id*.)  The Court of Appeals thereafter denied a motion to modify the Commissioner's ruling.

12  (*Id*., Exs. 71-72.)   It appears petitioner did not further prosecute his post-conviction motion to

13  vacate and that the superior court did not enter an order disposing of that motion.

14                    <u>DISCUSSION</u>

15      Petitioner raises eight grounds for relief in his amended petition:

16       1.      Petr is in custody in violation of his equal protection right to not be
        deprived of liberty w/o due process of law as guaranteed under 14th Am & 28
17       USC § 2241-43 & 2254.   The criminal process provided by the State has
        deprived petr a full & fair opportunity to litigate his fed. claims & properly
18       exhaust state remedy.

19       2.      Petr is in custody in violation of the 14th Am to not be deprived of liberty
        w/o due process of law.   Petr is entitled to habeas relief because incriminating
20       statements made during custodial interrogation were recorded & admitted at
        trial in violation of the rules set forth in Miranda v. Az, Michigan v. Mosley &
21       Edwards v. Az.   Accord, 5th Am., 6th Am.

22       3.      Petr is in custody in violation of right to not be deprived of liberty to

REPORT AND RECOMMENDATION
PAGE -11

01     habeas relief because the statements gathered by Kent Police on 1/18 &
    1/21/2003 were unconstitutionally obtained & admitted in trial in violation of
02     the rules set forth in Brown v. Ill., Taylor v. Ala, Dunaway v. N.Y., Lanier v. S.
    Carolina, Gerstein v. Pugh, McLaughlin & Wong Sun., Franklin v. Delaware,
03     (4th Am).

04     4.    Petr is in custody in violation of 14th Am right to not be deprived of
    liberty w/o due process of law.  Petr claims that illegally seized evidence
05     (automobile, RX-7) was used in trial to obtain an unconstitutional conviction in
    violation of the rules set forth in Marron v. U.S., Wong Sun, Mapp v. Ohio,
06     Silverthorne, Hayes v. Florida, Florida v. Roger & Franks v. Del. (4th Am).

07     5.    Petr is in custody in violation of 14th Am right not to be deprived of
    liberty w/o due process.  Petr's Faretta waiver was invalid as it was not
08     voluntary, but based on receiving ineffective assistance of counsel for over 2
    yrs, and the denial of the right to a speedy trial.   Petr is in custody in violation of
09     the rules set forth in Johnson v. Zerbst, Faretta, Strickland & Barker v. Aker,
    OK, Wingo (Accord 6th Am).
10

11     6.    Petr is in custody in violation of 14th Am right to not be deprived of
    liberty w/o due process of law.  Petr's conviction is unconstitutional as it is
12     based upon the violation of petr's right to counsel and in violation of the rules set
    forth in Johnson v. Zerbst & Gideon v. Wainwright & progeny.  Accord, 6th
13     Am. & McKaskle v. Wiggins.

14     7.    Petr is in custody in violation of 14th Am right to not be deprived of
    liberty w/o due process of law. Petr has been deprived of his right to appeal,
15     w/counsel as clearly established by Douglas v. California, Anders v. California,
    & Penson v. Ohio.

16     8.    Petr is in custody in violation of 14th Am right to not be deprived of
    liberty w/o due process of law.  Petr has been deprived of his right to receive a
17     direct appeal w/o invidious discrimination & w/o unreasoned distinction in
    violation of the rules set forth in Griffin v. Illinois & progeny.  Accord 5th &
18     6th Ams.

19 (Dkt. 69 at 5-15.)

20     Respondent argues petitioner failed to exhaust claims two through six and that those

21 claims are now procedurally barred and defaulted.  Respondent alternatively argues that

22 claims three through six lack merit regardless of whether they are exhausted and/or

REPORT AND RECOMMENDATION
PAGE -12

01 procedurally barred.   Respondent further argues that claims one and eight lack merit as

02 previously found by this Court, and that claim seven likewise lacks merit.   For the reasons set

03 forth below, the Court agrees with respondent and recommends habeas relief be denied and this

04 matter dismissed.

05 A.   Exhaustion

06       "An application for a writ of habeas corpus on behalf of a person in custody pursuant to

07 the judgment of a State court shall not be granted unless it appears that . . . the applicant has

08 exhausted the remedies available in the courts of the State."   28 U.S.C. § 2254(b)(1)(A).   The

09 exhaustion requirement "is designed to give the state courts a full and fair opportunity to

10 resolve federal constitutional claims before those claims are presented to the federal courts,"

11 and, therefore, requires "state prisoners [to] give the state courts one full opportunity to resolve

12 any constitutional issues by invoking one complete round of the State's established appellate

13 review process."   *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

14       In order to provide the state courts with the requisite "opportunity" to consider his

15 federal claims, a prisoner must "fairly present" his claims to each appropriate state court for

16 review, including a state supreme court with powers of discretionary review.   *Baldwin v.*

17 *Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and

18 *O'Sullivan*, 526 U.S. at 845).   *Accord James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994) (complete

19 round of the state's established review process includes presentation of a petitioner's claims to

20 the state's highest court).   Additionally, a petitioner must "alert the state courts to the fact that

21 he was asserting a claim under the United States Constitution."   *Hiivala v. Wood*, 195 F.3d

22 1098, 1106 (9th Cir. 1999) (citing *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)).   "The mere

**REPORT AND RECOMMENDATION**
**PAGE -13**

01     similarity between a claim of state and federal error is insufficient to establish exhaustion." *Id.*

02     (citing *Duncan*, 513 U.S. at 366). "Moreover, general appeals to broad constitutional

03     principles, such as due process, equal protection, and the right to a fair trial, are insufficient to

04     establish exhaustion." *Id.* (citing *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996)).

05           Petitioner did not fairly present any claims to the state courts for their consideration on

06     direct appeal.  Instead, his appeal was dismissed given his failure to file an opening brief.

07     Nor, as petitioner concedes (*see* Dkt. 72 at 10), did he present grounds two through six to the

08     Washington Supreme Court in a post-conviction collateral challenge.  The Court, therefore,

09     agrees with respondent that petitioner failed to exhaust grounds two through six by fairly

10     presenting those claims to the state courts.[2]

11     B.    <u>Procedural Bar and Default</u>

12           When a petitioner fails to exhaust his state court remedies and the court to which

13     petitioner would be required to present his claims in order to satisfy the exhaustion requirement

14     would now find the claims to be procedurally barred, there is a procedural default for purposes

15     of federal habeas review.  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).  Respondent

16     maintains grounds two through six are now procedurally barred under state law.  The Court

17     agrees.

18           RCW 10.73.090(1) provides that a petition for collateral attack on a judgment and

19     sentence in a criminal case must be filed within one year after the judgment becomes final.

20           2 Respondent does not address whether petitioner exhausted his state court remedies as to
claims one and eight.  Respondent does, however, address those claims on the merits.  Because the

21     Court may dismiss a habeas writ on the merits without addressing exhaustion, 28 U.S.C. § 2254(b)(2),
the Court declines to address the issue of exhaustion as to claims one and eight.  Also, as respondent

22     concedes petitioner appears to have exhausted his seventh ground for relief (*see* Dkt. 61 at 6), the Court
also considers that claim on the merits.

REPORT AND RECOMMENDATION
PAGE -14

01  Washington law also bars a petitioner from filing successive collateral challenges absent a

02  showing of good cause.   RCW 10.73.140; Wash. RAP 16.4(d).   In this case, because

03  petitioner's judgment became final in 2009, when the Court of Appeals dismissed his appeal

04  and issued a mandate (Dkt. 16, Ex. 54), and because petitioner previously filed collateral

05  challenges to his conviction, he is now procedurally barred from presenting his claims in state

06  court.

07       Petitioner provides no argument in support of his apparent contention that his

08  unexhausted claims would not be procedurally barred pursuant to RCW 10.73.090(1) and RCW

09  10.73.140.   Also, petitioner misplaces his reliance on 28 U.S.C. § 2254(b)(1)(B)(i) and (ii) as

10  excusing his failure to exhaust.   Those provisions state, respectively, that habeas relief shall

11  not be granted unless "there is an absence of available State corrective process[]" or

12  "circumstances exist that render such process ineffective to exhaust the remedies available in

13  the courts of the State."   § 2254(b)(1)(B)(i), (ii).   *See also Duckworth v. Serrano*, 454 U.S. 1,

14  3 (1981) ("An exception is made [to the exhaustion requirement] only if there is no opportunity

15  to obtain redress in state court or if the corrective process is so clearly deficient as to render

16  futile any effort to obtain relief.")   However, the absence or ineffectiveness of a state remedy is

17  not relevant in the event of a procedural default.   *Smith v. Baldwin*, 510 F.3d 1127, 1138-39

18  (9th Cir. 2007).   That is, when a prisoner fails to exhaust his federal claims in state court and

19  the state court would now find the claims barred under applicable state rules, the claims are

20  technically exhausted.   *Id.* (citing *Coleman*, 501 U.S. at 732 ("A habeas petitioner who has

21  defaulted his federal claims in state court meets the technical requirements for exhaustion; there

22  are no state remedies any longer 'available' to him.")); *Phillips v. Woodford*, 267 F.3d 966, 974

REPORT AND RECOMMENDATION
PAGE -15

01  (9th Cir. 2001) (where state courts would not afford petitioner a hearing on the merits of his

02  unexhausted claims, claims are "none-the-less exhausted because 'a return to state court for

03  exhaustion would be futile.'").   The relevant inquiry under these circumstances is whether the

04  procedural default can be excused, *Smith*, 510 F.3d at 1139, which is discussed below.

05  C.       Exceptions to Procedural Default

06          When a state prisoner defaults on his federal claims in state court, pursuant to an

07  independent and adequate state procedural rule, federal habeas review of the claims is barred

08  unless the prisoner can demonstrate cause and prejudice, or demonstrate that failure to consider

09  the claims will result in a fundamental miscarriage of justice.   *Coleman*, 501 U.S. at 750;

10  *Harris v. Reed*, 489 U.S. 255, 263 (1989).   To establish "cause," petitioner must show that

11  some objective factor external to the defense prevented him from complying with the state's

12  procedural rule.   *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488

13  (1986)).   To show "prejudice," the petitioner "must shoulder the burden of showing, not

14  merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his

15  *actual* and substantial disadvantage, infecting his entire trial with error of constitutional

16  dimensions."   *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).   Only

17  in an "extraordinary case" may the habeas court grant the writ without a showing of cause or

18  prejudice to correct a "fundamental miscarriage of justice" where a constitutional violation has

19  resulted in the conviction of a defendant who is actually innocent.   *Murray*, 477 U.S. at

20  495-96.

21  / / /

22  / / /

REPORT AND RECOMMENDATION
PAGE -16

01        Petitioner fails to set forth any basis for excusing his procedural default.[3]  "Cause

02 'must be something external to the petitioner, something that cannot fairly be attributed to

03 him.'"  *Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) (quoting *Coleman*, 501 U.S. at

04 753).  Cause may be found, for example, where the record shows an appellate counsel failed to

05 provide effective assistance of counsel, or where petitioner "was denied representation by

06 counsel on appeal altogether[.]"  *United States v. Skurdal*, 341 F.3d 921, 926 (9th Cir. 2003)

07 (cited sources omitted).

08        Here, as discussed below, petitioner fails to demonstrate he was denied counsel on

09 appeal or that the assistance provided by counsel on appeal in constructing the record was

10 ineffective.  Instead, the record shows petitioner chose to proceed pro se on appeal, repeatedly

11 failed to submit an opening brief on direct appeal despite being granted numerous extensions of

12 time in which to do so, and failed to pursue any substantive claims in either a direct appeal or

13 collateral proceeding despite the fact that an extensive record was compiled for that purpose by

14 appointed counsel.  Neither the mere fact that petitioner was proceeding pro se, nor the fact

15 that he remained unsatisfied with the record compiled by counsel demonstrates it was some

16 external factor, rather than petitioner's own decisions and inaction, that prevented his

17 compliance with state procedural rules.  *See, e.g.*, *Boyd*, 147 F.3d at 1126-27 ("Here, the cause

18 of Boyd's procedural default is his insistence on having a transcript before filing a notice of

19 _____

20        3 Petitioner maintains the claims in grounds two through six are cognizable in federal court
without a showing of cause and prejudice because respondent "cannot assert default."  (Dkt. 72 at 11.)
21 This argument fails for the reasons stated above.  Petitioner also maintains he can show cause and
prejudice "if necessary[.]"  (*See id.*)  However, as this matter has now been pending in this Court for
well over two years and petitioner was provided ample opportunity to address this issue, the undersigned
22 recommends the Court find an absence of cause and prejudice excusing the procedural default for the
reasons stated herein.

REPORT AND RECOMMENDATION
PAGE -17

01   appeal. Boyd's unfamiliarity with state appellate rules is no excuse: he rebuffed legal assistance

02   three times and willingly proceeded in state court pro se. 'When a pro se petitioner is able to

03   apply for post-conviction relief to a state court, the petitioner must be held accountable for

04   failure to timely pursue his remedy to the state supreme court.' *Hughes v. Idaho State Bd. of*

05   *Corrections*, 800 F.2d 905, 909 (9th Cir. 1986). Boyd cannot establish any reason, external to

06   him, to excuse his procedural default.")

07        Because petitioner has not met his burden of demonstrating cause for his procedural

08   default, this Court need not determine whether petitioner carried his burden of showing actual

09   prejudice. *Cavanaugh v. Kincheloe*, 877 F.2d 1443, 1448 (9th Cir. 1989) (citing *Smith v.*

10   *Murray*, 477 U.S. 527, 533 (1986)). In addition, petitioner makes no colorable showing of

11   actual innocence. Petitioner, therefore, fails to demonstrate that his second, third, fourth, fifth,

12   and sixth grounds for relief are eligible for review in these federal habeas proceedings.

13   D.   <u>Mixed Petitions</u>

14        The Court additionally observes that there is no basis for construing petitioner's habeas

15   petition as "mixed." A mixed petition includes both exhausted and unexhausted claims. *See*

16   *Rose v. Lundy*, 455 U.S. 509, 510 (1982). When faced with a mixed petition, a district court

17   may (1) dismiss the petition without prejudice to allow the petitioner to present his unexhausted

18   claims to the state court and then return to federal court to file a new petition; (2) stay the

19   petition to allow the petitioner to present his unexhausted claims to state court and then return to

20   federal court for review of a perfected petition; or (3) allow the petitioner to delete the

21   unexhausted claims and proceed with the exhausted claims. *See Rhines v. Weber*, 544 U.S.

22   269, 274-79 (2005).

REPORT AND RECOMMENDATION
PAGE -18

01        In this case, as discussed above, petitioner's claims are either exhausted or technically

02    exhausted.  *See Coleman*, 501 U.S. at 732.  Petitioner does not, therefore, present a mixed

03    petition.  *See*, *e.g.*, *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993) ("A petition containing

04    unexhausted but procedurally barred claims in addition to exhausted claims, is not a mixed

05    petition requiring dismissal[.]   Although the unexhausted claims may not have been presented

06    to the highest state court, exhaustion is not possible because the state court would find the

07    claims procedurally defaulted.")

08    E.    Merits Review

09        Federal habeas corpus relief is available only to a person "in custody in violation of the

10    Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).   A habeas corpus

11    petition may be granted with respect to any claim adjudicated on the merits in state court only if

12    the state court's decision was contrary to or involved an unreasonable application of clearly

13    established federal law, as determined by the United States Supreme Court.   § 2254(d)(1).   In

14    addition, a habeas corpus petition may be granted if the state court decision was based on an

15    unreasonable determination of the facts in light of the evidence presented in the state court

16    proceeding.   § 2254(d)(2).

17        Under the "contrary to" clause of § 2254(d)(1), a federal habeas court may grant the writ

18    only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a

19    question of law, or if the state court decides a case differently than the Supreme Court has on a

20    set of materially indistinguishable facts.   *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

21    Under the "unreasonable application" clause, a federal habeas court may grant the writ only if

22    the state court identifies the correct governing legal principle from the Supreme Court's

REPORT AND RECOMMENDATION
PAGE -19

01 decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id*. at

02 412-13.  The Supreme Court has made clear that a state court's decision may be overturned

03 only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69

04 (2003).

05       In considering a habeas petition, this Court's review "is limited to the record that was

06 before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, __ U.S.

07 __, 131 S. Ct. 1388, 1398-1400, 1415 (2011).  If a habeas petitioner challenges the

08 determination of a factual issue by a state court, such determination shall be presumed correct,

09 and the applicant has the burden of rebutting the presumption of correctness with clear and

10 convincing evidence.  28 U.S.C. § 2254(e)(1).  Also, federal habeas relief is not available for

11 errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-72 (1991) ("[I]t is not the province of

12 a federal habeas court to reexamine state-court determinations on state-law questions.")

13       1.    <u>Grounds One and Eight</u>:

14       In his first ground for relief, petitioner argues a violation of his constitutional rights

15 through the failure to provide him with a full and fair opportunity to litigate his federal claims

16 and properly exhaust his state remedies.   (Dkt. 69 at 5.)   He notes that none of his claims were

17 addressed on the merits on direct appeal and the absence of rulings on claims raised by

18 post-conviction motion.  (*Id*.)  Petitioner explains that the "substance" of this claim is an

19 absence of an "adequate & effective corrective judicial process to raise [and] exhaust his federal

20 claims."  (Dkt. 72 at 18 (citing 28 U.S.C. § 2254(b)(1)(B)(i) and (ii).)   In his eighth ground for

21 relief, petitioner alleges he was deprived of his right to pursue his direct appeal, pointing to

22 issues associated with his efforts to obtain a transcript and clerk's papers in perfecting the

01  record for appeal.   (Dkt. 69 at 15.)

02      To the extent petitioner's first ground for relief raises arguments associated with

03  exhaustion and procedural bar/default, the Court addressed such arguments above.   The Court

04  otherwise agrees with respondent that, although phrased differently, the claims raised in

05  petitioner's first and eighth grounds for relief are substantively the same as those raised in

06  petitioner's original petition.   That is, petitioner again argues a violation of his rights to due

07  process and equal protection through his inability to pursue his claims in state court, both on

08  direct appeal and in collateral proceedings.   (*See* Dkt. 4.)   As so construed, the Court further

09  agrees with respondent that petitioner fails to demonstrate any error in the Court's prior

10  consideration of these claims.

11      As stated in the first Report and Recommendation:

12      In his first ground for relief, petitioner argues the inadequacy of the
        record on direct appeal and the dismissal of that appeal resulted in his inability to
13      prosecute his appeal in violation of his constitutional rights to due process and
        equal protection.   He also appears to assert a related ineffective assistance of
14      counsel claim.   However, the Court finds no basis for habeas relief.

15      If state law provides criminal defendants a right to appeal, "the
        procedures used in deciding appeals must comport with the demands of the Due
16      Process and Equal Protection Clauses of the Constitution."   *Evitts v. Lucey*, 469
        U.S. 387, 393 (1985).   An appellate process satisfies those constitutional
17      concerns by providing a criminal appellant the "minimum safeguards
        necessary" to make the appeal "adequate and effective[.]"   *Smith v. Robbins*,
18      528 U.S. 259, 276-77 (2000) (quoted sources and internal quotation marks
        omitted).   States must, therefore, afford indigent defendants adequate and
19      effective appellate review.   *Id*. at 276.   "A State's procedure provides such
        review so long as it reasonably ensures that an indigent's appeal will be resolved
20      in a way that is related to the merit of that appeal."   *Id*.

21      A court cannot make available a trial transcript to those who can afford
        it, but deny transcripts to those who are indigent.   *Griffin v. Illinois*, 351 U.S.
22      12, 18-20 (1956) (plurality opinion).   Further, the record on appeal must be "of

REPORT AND RECOMMENDATION
PAGE -21

01     sufficient completeness" to allow the indigent appellant "proper consideration"
of his claims. *Mayer v. Chicago*, 404 U.S. 189, 194 (1971) (quoted sources and
02     internal quotation marks omitted). However, "[a] 'record of sufficient
completeness' does not translate automatically into a complete verbatim
03     transcript." *Id.* Alternatives suffice so long as "they place before the appellate
court an equivalent report of the events at trial from which the appellant's
04     contentions arise." *Id.* (speculating that a narrative statement based on the trial
judge's minutes taken during trial, a court reporter's untranscribed notes, or a
05     bystander's bill of exceptions may all be equally as good as a transcript; also
observing that "part or all of the stenographic transcript in certain cases will not
06     be germane to consideration of the appeal, and a State will not be required to
expend its funds unnecessarily in such circumstances.") *See also Norvell v.*
07     *Illinois*, 373 U.S. 420, 423 (1963) (refusing to extend *Griffin* to a case where the
transcript was unavailable due to the death of the court reporter); *Bransford v.*
08     *Brown*, 806 F.2d 83, 86 (6th Cir. 1986) (noting courts have not required "a
word-by-word transcript where the production of such is impossible and the
09     failure to produce the transcript is not invidiously motivated.")

10          What is impermissible under the Constitution is the total denial of a
transcript to indigent defendants without explanation. *Draper v. Washington*,
11     372 U.S. 487, 498 (1963) (noting "State could have endeavored to show that a
narrative statement or only a portion of the transcript would be adequate and
12     available for appellate consideration"). Also, some courts require a showing of
prejudice to set forth a constitutional violation. *See White v. State of Fla. Dept.*
13     *of Corrections*, 939 F.2d 912, 914 (11th Cir. 1991) (agreeing with other courts
that "in a federal habeas corpus case brought by a state prisoner, the absence of a
14     perfect transcript does not violate due process absent a showing of specific
prejudice.") (citing *Bransford*, 806 F.2d 83, and *Mitchell v. Wyrick*, 698 F.2d
15     940, 941-42 (8th Cir. 1983)).

16          In this case, it is undisputed the state court file for petitioner's direct
appeal contained over seventy volumes of transcripts and over 3,000 pages of
17     clerk's papers. (Dkt. 46, Ex. 46 at 10, 13.) Petitioner had been appointed
counsel to assist in obtaining the record and counsel determined the record was
18     complete. (*See id.*, Ex. 48.) The state court later granted petitioner the
opportunity to submit a concise list of items he believed were missing from the
19     record and, if he did so, the opportunity for reappointment of counsel for the
purpose of determining the existence of any additions to the record. (*Id.*)
20     While petitioner appears to maintain he submitted the necessary information to
the Washington Supreme Court in filing a motion for discretionary review (*see*
21     Dkt. 4 at 20), it remains that the Court of Appeals determined he failed to submit
the necessary information. (Dkt. 46, Ex. 46 at 6 (docket entry) and Ex. 70 (July
22     29, 2009 ruling by Commissioner of Court of Appeals stating that, despite the

REPORT AND RECOMMENDATION
PAGE -22

01   May 2008 order directing petitioner to submit a list of what he believed was
      missing from the record:  "Case never submitted anything indicating what he
02   believed was missing from the record.")) [4]   The Court of Appeals further
      determined that the record was complete.  (*Id.*, Ex. 70 at 1.)

04          As argued by respondent, the state court reasonably found the record on
      appeal sufficiently complete to allow for consideration of petitioner's claims.
      Despite his continued insistence to the contrary, petitioner fails to provide
05   support for the conclusion that further additions to the record were necessary to
      allow for appellate review of his claims.   Instead, his arguments are speculative
06   and insufficient to support a violation of petitioner's constitutional rights.  *See*,
      *e.g.*, *Scott v. Elo*, 302 F.3d 598, 604-05 (6th Cir. 2002) (speculation that a
07   missing portion of a transcript might aid a petitioner's claim is not sufficient to
      show a violation of due process).

09          Nor does petitioner demonstrate a constitutional violation through the
      dismissal of his appeal.   Despite numerous extensions of time extending more
10   than two years after the initial filing deadline, petitioner failed to file his opening
      brief and, consequently, failed to allow for the consideration of any claims on
11   the merits. [5]   There is no basis for concluding that petitioner was denied
      adequate and effective appellate review by the state courts.   Instead, the
      dismissal resulted from petitioner's inaction.

13          Petitioner also appears to assert a related ineffective assistance of
      appellate counsel claim in the failure to "perfect a record of sufficient
      completeness" under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and
14   *Evitts*, 469 U.S. at 397.   (*See* Dkt. 4 at 24.)   However, again without addressing
      the issue of exhaustion, the Court finds no support for such a claim.   That is,
15   petitioner fails to show either that appointed counsel's performance fell below
      an objective standard of reasonableness, or that a reasonable probability exists

---

17          4 [Footnote from first Report and Recommendation:  Petitioner correctly observes that the
      August 13, 2008 ruling denying review by the Washington Supreme Court stated:  "Apparently, Mr.
18   Case has since submitted a list to the Court of Appeals."   (Dkt. 46, Ex. 50.)   However, as stated above,
      the Court of Appeals found petitioner did not submit a list.   (*Id.*, Ex. 70.)]

19          5 [Footnote from first Report and Recommendation:  It is worth noting that this case is quite
      unusual in that, given petitioner's dissatisfaction with the record and refusal to submit an opening brief,
20   the state courts never addressed any claims on the merits.   Petitioner likewise does not here present any
      substantive claims relating to his conviction and sentence, and, in fact, could not do so given his failure
21   to pursue and exhaust any such claims in the state courts.   28 U.S.C. § 2254(b)(1)(A)("An application
      for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court
22   shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the
      courts of the State.").]

REPORT AND RECOMMENDATION
PAGE -23

01   that, but for counsel's error, the result of the proceedings would have been
02   different.   *Strickland*, 466 U.S. at 687-694.   Instead, petitioner's contention
     that the record was not sufficiently complete to allow for consideration of his
     claims remains speculative and unsupported.

03          For the reasons stated above, petitioner fails to show a violation of his
04   constitutional rights as related to the record on appeal and the dismissal of that
     appeal.   As such, his first ground for relief should be denied.
05          . . .

06          Petitioner argues in his second ground for relief that the failure of the
     superior court to rule on his July 2009 post-conviction motion violated his
07   constitutional rights to due process and equal protection.   However, "[s]tate
     collateral proceedings are not constitutionally required as an adjunct to the state
08   criminal proceedings and serve a different and more limited purpose than either
     the trial or appeal."   *Murray v. Giarratano*, 492 U.S. 1, 10 (1989).   The
09   Supreme Court has, therefore, determined there is no constitutional right to a
     collateral attack on a final judgment or conviction, *United States v. MacCollom*,
10   426 U.S. 317, 323 (1976), or to the appointment of counsel in such proceedings,
     *Murray*, 492 U.S. at 7-10.   Further, as held by the Ninth Circuit, "federal
11   habeas relief is not available to redress alleged procedural errors in state
     post-conviction proceedings."   *Ortiz v. Stewart*, 149 F.3d 923, 939 (9th Cir.
12   1998) (citing *Carriger v. Stewart*, 95 F.3d 755, 763 (9th Cir. 1996), *vacated on
     other grounds*, 132 F.3d 463 (1997); *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th
13   Cir. 1989)).   *See also Villafuerte v. Stewart*, 111 F.3d 616, 632 n.7 (9th Cir.
     1997) ("Villafuerte also presented a separate claim that he was denied due
14   process in his state habeas corpus proceedings. However, such claims are not
     addressable in a section 2254 proceeding.") (citing *Franzen*, 877 F.2d 26).
15   Consequently, petitioner sets forth no basis for habeas relief in his challenge to
     the absence of a superior court ruling on a post-conviction motion.

16

17   (Dkt. 47 at 7-11.)   Although later vacated for a different reason (*see* Dkt. 58), the Court issued

18   an Order adopting the above recommendations.   (Dkt. 55.)

19          Petitioner again fails to demonstrate a violation of his constitutional rights as related to

20   his ability to pursue his claims on either direct appeal or in a post-conviction motion.

21   Accordingly, for the same reasons previously identified and as reflected in the excerpt above,

22   the undersigned recommends the Court deny petitioner's first and eighth grounds for relief.

REPORT AND RECOMMENDATION
PAGE -24

01        2.      Grounds Five and Six:

02        As discussed above, petitioner failed to exhaust his second, third, fourth, fifth, and sixth

03   grounds for relief and those claims are now procedurally barred and defaulted.   The Court need

04   not, therefore, address these claims on the merits.   28 U.S.C. § 2254(b)(1)(A).   However,

05   consideration of petitioner's fifth and sixth grounds for relief, relating to the waiver of counsel

06   prior to trial, may be instructive in relation to petitioner's seventh, exhausted ground for relief,

07   relating to counsel on appeal.   The Court, therefore, herein addresses the alternative arguments

08   presented by respondent in relation to claims five and six.

09        The Sixth Amendment affords a criminal defendant both the right to counsel at trial and

10   the right to self-representation at trial.   *Faretta v. California*, 422 U.S. 806, 807 (1975).   A

11   defendant who elects to forgo representation at trial must do so knowingly and intelligently.

12   *Id*. at 835 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938)).   The Supreme Court has

13   described a waiver of counsel as intelligent "when the defendant 'knows what he is doing and

14   his choice is made with eyes open.'"   *Iowa v. Tovar*, 541 U.S. 77, 88 (2004) (citing *Adams v.*

15   *McCann*, 317 U.S. 269, 279 (1942)).   He must, therefore, be "made aware of the nature of the

16   charges against him, the possible penalties, and the risks of self-representation."   *United States*

17   *v. Mendez-Sanchez*, 563 F.3d 935, 944-45 (9th Cir. 2009).

18        While it is clear a defendant must be warned of the dangers and disadvantages of

19   self-representation before being permitted to proceed pro se at trial, the Supreme Court has not

20   "prescribed any formula or script to be read to a defendant who states that he elects to proceed

21   without counsel."   *Tovar*, 541 U.S. at 88.   The information necessary for a defendant to make

22   an intelligent waiver will depend on the facts and circumstances of each case.   *Id*.   As stated

REPORT AND RECOMMENDATION
PAGE -25

01   by the Supreme Court:  "'[T]he law ordinarily considers a waiver knowing, intelligent, and

02   sufficiently aware if the defendant fully understands the nature of the right and how it would

03   likely apply in general in the circumstances--even though the defendant may not know the

04   *specific detailed* consequences of invoking it.'"   *Id.* at 92 (quoting *United States v. Ruiz*, 536

05   U.S. 622, 629 (2002) (emphasis in original)).   Also, "[i]n a collateral attack on an uncounseled

06   conviction, it is the defendant's burden to prove that he did not competently and intelligently

07   waive his right to the assistance of counsel."   *Id.*

08         The Ninth Circuit has interpreted *Faretta* to also require that a defendant's request for

09   self-representation be unequivocal.   *Mendez-Sanchez*, 563 F.3d at 945-46.   *See also Stenson*

10   *v. Lambert*, 504 F.3d 873, 882 (9th Cir. 2007) ("We also have held that *Faretta* requires a

11   defendant's request for self-representation be unequivocal, timely, and not for purposes of

12   delay.") (citing *United States v. Erskine*, 355 F.3d 1161, 1167 (9th Cir. 2004)).   This

13   requirement both avoids the inadvertent waiver of counsel "through occasional musings on the

14   benefit of self-representation[,]" and prevents manipulation of the mutually exclusive rights to

15   counsel and self-representation by forcing a defendant to make an explicit choice.   *Adams v.*

16   *Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989).

17         In his fifth ground for relief, petitioner maintains his waiver of counsel prior to trial was

18   not voluntary and, rather, that he was forced into a decision to proceed pro se given the

19   ineffective assistance provided by and irreconcilable conflicts with his appointed counsel.

20   (Dkt. 69 at 12.)   He avers that the "trial court would allow no more substitution[.]"   (*Id.*)

21   Petitioner also asserts his decision to proceed pro se was not knowing, willing, or voluntary as

22   he was not informed his decision to proceed pro se "included a forfeiture to re-invoking right to

REPORT AND RECOMMENDATION
PAGE -26

01  counsel[.]"   (*Id.*)

02      In his sixth ground for relief, petitioner avers that, "[b]efore trial, and during voir dire

03  [he] re-invoked his right to counsel and withdrew the prior invalid Faretta waiver[,]" that his

04  standby counsel was unprepared to resume his lead counsel role, and that the court "ordered

05  [him] to proceed pro se or be tried in absentia."   (*Id.* at 13.)   He states he was not prepared for

06  trial and presented no defense, other than some witness cross-examination, to rebut the

07  prosecution's case-in-chief.   (*Id.*)

08      A review of the record does not support petitioner's contention that he was forced into

09  the decision to proceed pro se.   Indeed, the record reflects the trial judge found no deficiencies

10  in the assistance provided by appointed counsel.   (*See, e.g.*, Dkt. 65, Ex. 78 at 59-62 and Ex. 79

11  at 33.)   The trial judge also found petitioner's behavior of filing bar complaints and lawsuits to

12  raise the question of whether petitioner was engaging in a pattern of conduct designed to

13  destroy his relationships with counsel.   (*See id.*, Exs. 76-79.)

14      The record further shows the adequacy of the *Faretta* warnings provided to petitioner.

15  The trial judge, on two separate occasions, engaged in colloquies with petitioner as to the

16  waiver of counsel and the invocation of the right to self-representation.   (*See id.*, Ex. 79 at

17  21-63 and Ex. 80 at 7-48.)   The trial judge noted the nature of the charges against petitioner

18  and the possible penalties, and went into great detail as to the dangers and disadvantages of

19  self-representation, both as a general matter and in relation to specific aspects of a trial.   (*Id.*)

20      Nor is there any basis for concluding petitioner's decision to represent himself at trial

21  was anything other than unequivocal, voluntary, knowing, and intelligent.   The trial judge did

22  not refuse additional substitution of counsel and, in fact, specifically clarified this point when

REPORT AND RECOMMENDATION
PAGE -27

01 prompted by petitioner. (*Id.*, Ex. 80 at 4-5.)   The judge also repeatedly sought clarification as

02 to petitioner's position in relation to counsel and self-representation, inquiring specifically into

03 a possible equivocation in a written motion. (*Id.* at 7-15.)   Petitioner confirmed he wanted to

04 proceed pro se (*id.*), and the trial judge found petitioner's waiver of counsel knowing,

05 intelligent, and voluntary (*id.* at 47 and Dkt. 16, Ex. 2; *see also* Dkt. 65, Ex. 79 at 62).

06 　　　　Finally, there is an absence of evidence petitioner affirmatively requested to re-invoke

07 his right to counsel or to rescind his waiver of counsel prior to trial.   The record, instead,

08 supports the conclusion that petitioner proceeded pro se by his own choice, both at trial and

09 long after the entry of the verdict. (*See*, *e.g.*, Dkt. 66, Ex. 87 (January 2007 order:   "Appellant

10 has made very clear in the litigation at the trial court level that he does not wish to be

11 represented by counsel[.]"); Dkt. 16, Ex. 49 at 7, 14 (petitioner, in June 2008, "ardently

12 oppos[ed]" the reappointment of counsel to address the perfection of the record and maintained

13 such appointment violated his right to self-representation) and at Appx. 7 ("I have exercised my

14 right to self-representation (pro se) since March 2005.   I elected to prosecute my appeal as pro

15 se and filed my first 'Notice of Appeal' in June, 2006.")

16 　　　　Moreover, even if petitioner could show he sought to re-invoke his right to counsel and

17 withdraw his prior waiver just prior to trial, there is no basis for concluding the denial of such a

18 request violated his constitutional rights.   As an initial matter, there is no clearly established

19 Supreme Court precedent supporting a constitutional entitlement to reappointment of counsel

20 after a valid waiver of the right to counsel under *Faretta*.   *Marshall v. Rodgers*, ___ U.S. ___,

21 133 S.Ct. 1446, 1449 (2013); *John-Charles v. California*, 646 F.3d 1243, 1249 (9th Cir. 2011).

22 Accordingly, a state court adjudication of this claim could not be deemed an unreasonable

**REPORT AND RECOMMENDATION**
**PAGE -28**

01   application of clearly established federal law.  *Marshall*, 133 S.Ct. at 1449-51 (reversing

02   appellate court's decision finding trial judge violated criminal defendant's Sixth Amendment

03   right by not appointing counsel after the defendant had executed a valid waiver of counsel and

04   represented himself at trial, but sought and was denied appointment of counsel to file a

05   post-conviction motion for a new trial; noting absence of any Supreme Court decision

06   addressing criminal defendant's ability to reassert right to counsel once validly waived, and

07   finding no basis for conclusion that the state court's approach to case was contrary to or an

08   unreasonable application of clearly established federal law).

09          Further, "when a defendant who elected to proceed pro se later demands an attorney,

10   there is broad consensus that, once waived, the right to counsel is no longer unqualified."

11   *United States v. Kerr*, 752 F.3d 206, 220 (2d Cir. 2014) (citing circuit court decisions).  *Accord*

12   *John-Charles*, 646 F.3d at 1250 ("[I]t is clear that 'fairminded jurists' could conclude that there

13   is no absolute, constitutional right to reappointment of counsel after a *Faretta* waiver.")

14   Therefore, a court may, for example, "force a defendant to proceed pro se if his conduct is

15   'dilatory and hinders the efficient administration of justice.'"  *United States v. Thompson*, 587

16   F.3d 1165, 1175 (9th Cir. 2009) (quoted sources omitted).  *See also Menefield v. Borg*, 881

17   F.2d 696 (9th Cir. 1989) ("There are times when the criminal justice system would be poorly

18   served by allowing the defendant to reverse his course at the last minute and insist upon

19   representation by counsel.  When, for example, for purposes of delay, criminal defendants

20   have sought continuances on the eve of trial, we have refused to disrupt the proceedings to

21   accommodate their wishes.")

22          In this case, whether or not the trial judge did reject a last minute request for

REPORT AND RECOMMENDATION
PAGE -29

01    reappointment of counsel, it is clear such rejection would have been reasonably based, at least

02    in part, on petitioner's dilatory conduct.   The trial judge addressed that conduct in the July

03    2006 sentencing hearing, stating:

04          . . . I don't know how many times I have remonstrated with you that all of
        these legal motions and the like that were presented to me were putting your
05         focus off from what was upcoming, which was the factual presentations and
        defenses that you might wish to present to the Court during the time of your trial,
06         and we ultimately wound up after three and a half years with not a single witness
        being produced in Court for purposes of defense after significant representations
07         over the years by you about all the things you were going to do[.]"

08    (Dkt. 65, Ex. 81 at 18-19.)   Noting the same behavior post-verdict in the filing of numerous

09    motions, the court denied a motion for a continuance, concluding:

10          And, I think we can go forward at this point.   Whether you want to do
        that or not, I tend to think there is some truth in the argument that you simply
11         don't want to face that, and after fighting, and fighting, and fighting, your
        behavior during the trial was to basically cave in, basically want [standby
12         counsel] Mr. Hicks to do the work that you wouldn't even consult with him on in
        the (inaudible) of the case.

13

14          So, I have some reason, based on your pattern of behavior before to think
        that this is not a very productive exercise to entertain a motion to continue, and
        the motion will be denied.

15

16    (*Id*. at 19-21.)   Moreover, it remains that petitioner had knowingly and intelligently waived his

17    right to counsel and that standby counsel was available to assist him at trial.

18        With consideration of the above, as well as the circumstances as a whole surrounding

19    his association with and waiver of counsel, petitioner fails to demonstrate a violation of his

20    constitutional rights through a denial of reappointment of counsel on the eve of trial.   *See*, *e.g.*,

21    *Thompson*, 587 F.3d at 1175-76 (finding "fair and reasonable" a trial judge's denial of requests

22    for a continuance and reappointment counsel, made three and a half years after the initial

REPORT AND RECOMMENDATION
PAGE -30

pretrial conference and on the day before trial, where denial was based on, *inter alia*, numerous continuances previously granted, the defendant's "lack of good faith," prior warnings no more continuances would be granted, and "the court's near certain belief that [defendant] would eventually ask to represent himself again in order to delay trial."; also finding relevant the fact that the defendant had been appointed standby counsel for trial and had knowingly and intelligently waived his right to counsel).  For this reason, and for the reasons stated above, petitioners' fifth and sixth claims, even if not procedurally barred and defaulted, provide no basis for habeas relief.

>    3.    Ground Seven:

In his seventh ground for relief, petitioner maintains he was deprived of his right to appeal with counsel in violation of his constitutional rights.  (Dkt. 69 at 14.)  He notes the absence of any appointment of counsel and the absence of a record that he knowingly, willingly, and voluntarily waived his right to appeal with counsel.  Petitioner also states he "requested legal assistance, and reappointment of counsel."  (*Id.*)

Indigent criminal defendants pursuing a first appeal are entitled as of right to the appointment of counsel.  *Douglas v. California*, 372 U.S. 353, 355-57 (1963); *accord Halbert v. Michigan*, 545 U.S. 605, 610 (2005).  While the right to counsel at trial is grounded in the Sixth Amendment, *see Strickland v. Washington*, 466 U.S. 668, 687 (1984), the right to counsel on first appeal arises under the Fourteenth Amendment, *Martinez v. Court of Appeal*, 528 U.S. 152, 155 (2000).

As with any right, the right to counsel on appeal may be waived.  *See generally United States v. Mezzanatto*, 513 U.S. 196, 201 (1995) ("A criminal defendant may knowingly and

REPORT AND RECOMMENDATION
PAGE -31

01 voluntarily waive many of the most fundamental protections afforded by the Constitution.")

02 However, while the Supreme Court has addressed the requirements for waiving the Sixth

03 Amendment right to counsel and to invoke self-representation at trial, *see Faretta*, 422 U.S. at

04 835, and *Tovar*, 541 U.S. at 88-94, it has not done so in relation to the Fourteenth Amendment

05 right to counsel on appeal.  *Cf. Martinez*, 528 U.S. at 159-60 (finding Sixth Amendment right

06 to proceed without counsel at trial does not extend to grant a right to self-representation on

07 appeal).   There is, therefore, no Supreme Court decision establishing any specific procedure

08 that must be followed before allowing a criminal defendant on first appeal to waive counsel and

09 proceed pro se on appeal.

10      Petitioner maintains a constitutional violation through the failure to make a record that

11 he knowingly, willingly, and voluntarily waived his right to appeal with counsel.   However,

12 given the absence of any clearly established federal law requiring any such finding, the state

13 court adjudication of this claim cannot be deemed an unreasonable application of clearly

14 established federal law.   *See Marshall*, 133 S.Ct. at 1449-51.   Moreover, even with

15 consideration of the clearly established federal law associated with the waiver of counsel at

16 trial, petitioner's seventh ground for relief lacks merit for the reasons set forth below.

17      As discussed above, petitioner was properly advised as to his waiver of counsel and

18 decision to proceed pro se at trial, and demonstrates no error in the trial court's conclusion that

19 his waiver of counsel and invocation of his right to self-representation was unequivocal,

20 voluntary, intelligent, and knowing.   Following his conviction, the trial judge advised

21 petitioner of his right to counsel on appeal and petitioner chose to file his notice of appeal pro

22 se.  (Dkt. 65, Ex. 81 at 53-54 and Dkt. 66, Ex. 83.)   A month later, the trial judge again

REPORT AND RECOMMENDATION
PAGE -32

01    advised petitioner of his right to counsel on appeal, adding that petitioner "might be well served

02    by appellate counsel" in compiling the record for the appeal.   (Dkt. 65, Ex. 82 at 14-16.)   The

03    prosecutor also noted petitioner's right to counsel on appeal.   (*Id*.)   Rather than requesting

04    counsel, petitioner reaffirmed his intention to proceed pro se in filing various documents.   (*See*

05    Dkt. 66, Exs. 84-85 and Dkt. 16, Ex. 32.)

06          The state court continued to advise petitioner of his right to counsel.   Six months after

07    petitioner filed his notice of appeal pro se, the state court noted petitioner had made his desire to

08    proceed without counsel "very clear[,]" that he had omitted appointment of counsel from the

09    order of indigency he prepared for the court's signature, despite the fact that he "qualifies for

10    appointed counsel on appeal," and that the court wanted to "respect his wishes as much as

11    possible" despite the fact that petitioner had "been advised that an appellant does not have a

12    constitutional right to represent himself on appeal[.]"   (Dkt. 66, Ex. 87.)   Again, petitioner

13    failed to request or give any indication he desired the appointment of counsel.   Indeed, some

14    two years after petitioner had filed his notice of appeal, he not only reconfirmed his desire to

15    proceed pro se, he "ardently oppos[ed]" the reappointment of counsel for the limited purpose of

16    addressing the perfection of the record for appeal, and maintained such appointment violated

17    his rights.   (Dkt. 16, Ex. 49; *see also id*., Appx. 7 ("I have exercised my right to

18    self-representation (pro se) since March 2005.   I elected to prosecute my appeal as pro se and

19    filed my first 'Notice of Appeal' in June, 2006."))

20          It was not until March 2011, almost five years after petitioner filed his appeal and more

21    than a year after the state court issued its mandate following the dismissal of that appeal, that

22    petitioner raised the issue as to the absence of a colloquy establishing his waiver of counsel on

REPORT AND RECOMMENDATION
PAGE -33

01  appeal.  (Dkt. 16, Ex. 59.)  Even then, however, petitioner continued to maintain a

02  "guaranteed right to self-representation on appeal."  (*Id.* at 2, 4-5, 11-13.)

03       Petitioner provides no support for his assertion that he requested the appointment of

04  counsel on appeal.  (*See* Dkt. 69 at 14.)  Instead, the facts and circumstances in this case show

05  petitioner knowingly and intelligently waived his right to counsel on appeal and elected to

06  proceed pro se.  *See*, *e.g.*, *United States v. Feldman*, 830 F.2d 134, 135-36 (9th Cir. 1987)

07  (record plainly showed petitioner who appeared pro se throughout his trial and appeal and

08  repeatedly "referred to himself as 'counsel of record[]'" on appeal, "knowingly and

09  intelligently waived his right to counsel and chose to appear pro se.").  In light of those facts

10  and circumstances, and with consideration of the record as a whole, petitioner's reliance on the

11  absence of an express colloquy or state court finding as to waiver on appeal is unavailing.  *Cf.*

12  *Hendricks v. Zenon*, 993 F.2d 664, 670 (9th Cir. 1994) (noting rare instances, involving "'an

13  unusual fact situation in which the background and experience of the defendant in legal matters

14  was apparent from the record[,]'" in which the failure to discuss the elements required for a

15  finding of a valid waiver of counsel at trial would "'not necessitate automatic reversal when the

16  record as a whole reveals a knowing and intelligent waiver.'") (quoting *United States v.*

17  *Balough*, 820 F.2d 1485 (9th Cir. 1987)).

18       Petitioner, in sum, fails to demonstrate that the state court adjudication of his claim as to

19  the deprivation of counsel on appeal was an unreasonable application of clearly established

20  federal law.  As such, his seventh ground for relief should be denied.

21                                    <u>CONCLUSION</u>

22       For the reasons discussed above, the Court recommends that petitioner's amended

REPORT AND RECOMMENDATION
PAGE -34

01  habeas petition (Dkt. 69) be DENIED, and this case DISMISSED.   An evidentiary hearing is

02  not required as the record conclusively shows that petitioner is not entitled to relief.

03  Additionally, because petitioner has not made "a substantial showing of the denial of a

04  constitutional right[]" 28 U.S.C. § 2253(c)(2), the Court concludes that he is not entitled to a

05  certificate of appealability with respect to his claims.   *See Miller-El v. Cockrell*, 537 U.S. 322,

06  327 (2003) (a petitioner satisfies this standard "by demonstrating that jurists of reason could

07  disagree with the district court's resolution of his constitutional claims or that jurists could

08  conclude the issues presented are adequate to deserve encouragement to proceed further.")   A

09  proposed Order accompanies this Report and Recommendation.

10          DATED this 12th day of August, 2014.

11

12                                                          Mary Alice Theiler
                                                            Chief United States Magistrate Judge
13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -35